IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ZAMMA CANADA LIMITED f/k/a )
ZAMMA CANADA CORP., )
                                                          )
           Plaintiff, )
                                                          )
v. ) Civil Action No. 3:20cv353–HEH
                                                          )
ZAMMA CORPORATION, )
                                                          )
          Defendant. )

**MEMORANDUM OPINION**
**(Disposition of Pending Motions)**

This matter is before the Court on four Motions: Zamma Corporation's ("Defendant") Partial Motion to Dismiss (ECF No. 14), Zamma Canada Limited's ("Plaintiff") Motion to Dismiss Defendant's counterclaims (ECF No. 25), Defendant's Motion to Strike Exhibit 2 to the Amended Complaint (ECF No. 16), and Defendant's Motion to Strike Plaintiff's jury demand in the Amended Complaint (ECF No. 37). Plaintiff filed its Amended Complaint on May 23, 2020, alleging breach of contract and tortious interference with contract and business expectancy claims, and seeking a declaratory judgment excusing Plaintiff from performance under the parties' contract. Defendant filed its Answer and Counterclaims on June 10, 2020, alleging its own breach of contract claims and seeking a declaratory judgment establishing that the parties' contract is terminated. The parties have filed memoranda supporting their respective positions on each Motion, and the matter is ripe for this Court's review. The Court will dispense with oral argument because the facts and legal contentions are adequately

presented in the materials before it, and oral argument would not aid in the decisional process. *See* E.D. Va. Local Civ. R. 7(J). For the reasons that follow, the Court will grant Defendant's Partial Motion to Dismiss, deny Plaintiff's Motion to Dismiss, deny Defendant's Motion to Strike Exhibit 2, and grant Defendant's Motion to Strike Plaintiff's jury demand.

## I. BACKGROUND

Defendant manufactures and sells pre-finished vinyl, laminate, and wood floor moldings and stair renewal products used for residential and multi-family home improvement. (Answer & Countercls. 4, ECF No. 13.) Defendant is based in Orange County, Virginia, and sells its flooring materials to big box retailers, including Home Depot. (*Id.* at 4–5.) Home Depot Canada asked Defendant to create a distribution arm in Canada to better meet its Canadian demand. (Compl. 3, ECF No. 6.) In response to Home Depot's request, Defendant built distribution infrastructure in Canada. (*Id.*) In 2017, a Northern Virginia-based private equity firm, Ridge Capital Partners, LLC ("Ridge Capital"), began negotiations to purchase Defendant. (*Id.*) Ridge Capital, however, was not interested in buying Defendant's Canadian distribution operation. (*Id.*) To facilitate the sale to Ridge Capital, Defendant sold and severed the Canadian distribution arm, thereby creating Plaintiff. (*Id.*) To continue Defendant's pre-sale Canadian distribution process, on November 10, 2017, Defendant and Plaintiff executed the contract at issue in this litigation—the Supply & Service Agreement ("the Agreement"). (*Id.*) Under the Agreement, Defendant was to continue as manufacturer, selling goods to Plaintiff for distribution to Home Depot Canada. (*Id.*)

2

Plaintiff's Amended Complaint alleges three counts: breach of contract (Count I), declaration of excused performance (Count II), and tortious interference with contract or business expectancy (Count III). Defendant thereafter filed a Partial Motion to Dismiss, seeking to dismiss Count III and Plaintiff's punitive and extra-contractual damages claims. Defendant also filed separate motions to strike Exhibit 2 to the Amended Complaint and Plaintiff's jury demand. Defendant additionally filed its Answer and Counterclaims alleging four counts: breach of contract for failure to pay (Count I), breach of contract for unauthorized payment reduction (Count II), breach of contract for failure to perform (Count III), and a declaratory judgment claim seeking to establish the Agreement's termination date (Count IV). Plaintiff filed a Motion to Dismiss Defendant's counterclaims.

Plaintiff alleges that under the Agreement, it had exclusive rights to distribute Defendant's products to Home Depot Canada. Plaintiff states that Defendant was to provide IT phone support, maintain Plaintiff's books and records on Defendant's servers, and conduct all marketing and sales services with Home Depot Canada. According to Plaintiff, Defendant attempted to drive it out of business to cut Plaintiff out as middleman and directly distribute Defendant's manufactured goods to Home Depot Canada. To achieve this end, Plaintiff alleges, Defendant shut down Plaintiff's access to its own financial and business records and wiped out personal information stored on Plaintiff's desktops. Plaintiff also contends that Defendant failed to timely and properly ship products and process invoices.

By contrast, Defendant maintains that Plaintiff is to blame for the dissolution of the Agreement. Defendant states that, pursuant to the Agreement, Plaintiff was a non-exclusive distributor of Defendant's products to Home Depot Canada. Beginning in 2018, Plaintiff purportedly failed to pay for Defendant's products, thereby creating an alleged outstanding deficit totaling $782,285.00 in principal and $157,478.00 in costs and interest. Defendant also alleges that it started to receive complaints from Home Depot Canada beginning in 2019 that Plaintiff failed to timely fulfill orders. Defendant claims that Plaintiff carried insufficient inventory to meet Home Depot Canada's demands in an effort to reduce overhead and maximize profits. Finally, Defendant alleges that Plaintiff unilaterally deducted $200,000.00 from an outstanding invoice on April 1, 2019. The parties agree that Virginia law applies in this Court's analysis of all pending motions.

## II.   ANALYSIS

Plaintiff and Defendant each invoke Federal Rule of Civil Procedure 12(b)(6) as grounds for their respective motions to dismiss. "In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in

4

original) (quoting *Tobey,* 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas,* 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey,* 706 F.3d at 386 (quoting *Iqbal,* 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner,* 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal,* 556 U.S. at 678.

In ruling on a motion to dismiss, a court may also "consider documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan,* 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville Invs. v. Com. Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991)). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents

5

of that document." *Id.* at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it," and it should consider whether plaintiff relied on the attachment for its truthfulness.[1] *See id.* at 167-69; *see also Wallace v. Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

### A. Defendant's Partial Motion to Dismiss

Defendant moves to dismiss Count III of the Amended Complaint and Plaintiff's punitive and extra-contractual damages. Defendant does not contest the sufficiency of Plaintiff's contract claims, but argues that the facts alleged are insufficient to support a separate tort claim. Plaintiff responds that it sufficiently alleges facts that allow the Court to draw the reasonable inference that Defendant interfered with Plaintiff's contract or expected business with Home Depot Canada through extra-contractual acts. Plaintiff further contends that the parties are potential competitors for Home Depot Canada's business and that Defendant employed improper methods to interfere with Plaintiff's relationship with Home Depot Canada.

Under Virginia law, to support a tortious interference claim, Plaintiff must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) the relationship or expectancy was known by the interfering party; (3) intentional

---

[1] In this case, Plaintiff attached the Agreement as Exhibit 1 to the Amended Complaint, and Defendant adopts Plaintiff's Exhibit 1 in its Answer and Counterclaim. Accordingly, the Court finds that both parties have adopted as true the contents of the Agreement. Therefore, in the event of any conflict between the allegations in the Amended Complaint and the content of the Agreement, the Agreement must prevail. *See Goines*, 822 F.3d at 166.

interference induced or created a breach or termination of the relationship or expectancy; and (4) damage occurred to the party whose relationship or expectancy was disrupted. *Southprint, Inc. v. H3, Inc.*, 208 F. App'x 249, 252 (4th Cir. 2006) (citing *Duggin v. Adams*, 360 S.E.2d 832, 835 (Va. 1987)). To support a claim that Defendant disrupted a business or contractual expectation, Plaintiff must additionally allege that the interfering party employed "improper methods." *Duggin*, 360 S.E.2d at 836 (quoting *Hechler Chevrolet v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)).

Tortious interference is a common law tort historically rooted in the concept that contractual rights include the right to seek redress against a third party interfering with an existing or expected contract between two parties. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014). Said interference must be purposeful. *See Duggin*, 360 S.E.2d at 835. When only duties arising from a contract are at issue, "a breach of contract 'does not, without more, create a basis for recovery in tort.'" *Dunlap*, 754 S.E.2d at 319 (quoting *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010)).

Taking the facts in the light most favorable to Plaintiff, the Amended Complaint fails to present a cognizable tortious interference claim. Plaintiff plausibly had a valid contractual relationship or business expectancy with Home Depot Canada with "a projected volume of $5,000,000.00 per year and historical profits . . . of approximately $500,000.00 per year." (Compl. 6, ECF No. 6.) Plaintiff asserts that Defendant "knew of [Plaintiff's] business relationship with The Home Depot Canada" and the Agreement contemplates Plaintiff distributing Defendant's goods to Home Depot Canada. (*Id.*) Finally, Plaintiff alleges that Defendant's breaches of the Agreement damaged Plaintiff's

7

business with Home Depot Canada in an amount to be proven at trial. Plaintiff fails to allege, however, the crucial element of intentional interference. Plaintiff contends that Defendant "embarked on a campaign to drive [Plaintiff] out of business" by shutting down Plaintiff's access to its "financial and business records" and by wiping out "personal information stored locally on [Plaintiff's] desktops." (Compl. 4, 6, ECF No. 6.) Plaintiff also makes the conclusory allegations that Defendant's actions constituted "improper conduct, insofar as it violated expected standards of conduct in the industry, and . . . unethical conduct, sharp dealing, and overreaching." (*Id.* at 6.) Yet Plaintiff itself alleges that this action—including its tortious interference claim—arises out of the Agreement. (*Id.* at 2, 5.) Conspicuously absent from the Amended Complaint are any facts supporting Plaintiff's conclusion that Defendant purposely interfered with Plaintiff's business with Home Depot Canada. The sole factual allegation in the Amended Complaint is that the Agreement required that Defendant provide IT support and data storage, and that Defendant breached this obligation by restricting Plaintiff's access to electronic records and erasing certain personal information. Plaintiff's conclusory description of Defendant's alleged misconduct is insufficient.

Plaintiff cites *Dunlap* for the premise that the common law duty to refrain from interfering with another's contractual and business relationships is "a common law corollary of the contract." 754 S.E.2d at 319. In *Dunlap*, the Supreme Court of Virginia addressed whether tortious interference could constitute the "unlawful act" element required to form the basis of a business conspiracy claim. *Id.* at 318. The court ultimately held that tortious interference does constitute an unlawful act, and therefore

8

can provide the basis for a business conspiracy claim. *Id.* at 319. However, Plaintiff abstracts the court's analysis. In *Dunlap*, the court addressed the rights of two contracting parties against a third party, not a potential contractual relationship between the plaintiff and the interfering defendant. *Id.* at 318–19. *Dunlap* explicitly states that breach of duties arising from a contract cannot support a tortious interference claim. *Id.* at 319 (citing *Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 946–47 (Va. 2009) ("To avoid turning every breach of contract into a tort, however, we have consistently adhered to the rule that, in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'") (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991))). As Plaintiff cannot sustain a claim for tortious interference based only on a duty arising under the Agreement, the Court will grant Defendant's motion to dismiss Count III of the Amended Complaint.

Defendant further asserts that, under the terms of the Agreement, Plaintiff is not entitled to extra-contractual or punitive damages. Under "Limitation of Liability; Actions," the Agreement states that:

> Except for its indemnification obligations under Section 7 of this agreement and confidentiality obligations under Section 8 of this agreement, in no event shall [Defendant] be liable under this agreement to [Plaintiff] for any incidental, consequential, indirect, statutory, special, exemplary or punitive damages, including, but not limited to, lost profits, loss of use, loss of time, shutdown or slowdown costs, inconvenience, loss [sic] business opportunities, damage to goodwill or reputation, or other economic loss, regardless of whether such liability is based on breach of contract, tort, strict liability or otherwise, and even if advised of the possibility of such damages or such damages could have been reasonably foreseen. [Defendant's] aggregate liability under this agreement for any direct

> damages shall not exceed the purchase price paid or payable by [Plaintiff] to [Defendant] under this agreement in the twelve (12) month period immediately preceding the events giving rise to such liability.

(Compl. Ex. 1 § 10, ECF No. 6 (altered capitalization).) Plaintiff contends that its tortious interference claim opens the door for extra-contractual and punitive damages because the Agreement only precludes these damages "under this agreement" and Plaintiff's tortious interference claims are extra-contractual. (*Id.*) However, Plaintiff's argument turns on the validity of its tortious interference claims which will be dismissed. Thus, the damages issue is largely moot.

Regardless, Plaintiff's punitive and extra-contractual damages claims are precluded under the Agreement. Virginia follows the "plain meaning" rule, which requires that this Court give full effect to contractual language so long as the language can be read without conflict. *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983). Construing the words as written, the Court finds the Agreement's language precluding all punitive and extra-contractual damages to be clear and unambiguous. Thus, the Court will grant Defendant's motion to dismiss Plaintiff's punitive and extra-contractual damages claims.

### B. Plaintiff's Motion to Dismiss

Plaintiff's Motion to Dismiss hinges entirely upon the timing of Defendant's claims and the Agreement's termination. The Agreement requires the parties to bring claims arising out of the contract within one year, except for claims for "money due on an open account." (Compl. Ex. 1 § 10, ECF No. 6.) Therefore, claims not relating to money due on an open account ("non-monetary" claims) must be brought within one year of

10

of when the cause of action accrues. *See Bd. of Supervisors of Fairfax Cnty. v. Sampson*, 369 S.E.2d 178, 180 (Va. 1988) ("Parties to a contract properly may agree that a claim under the contract must be enforced within a shorter time limit than that fixed by statute."). As Virginia law applies, claims relating to money due on an open account ("monetary" claims) must be brought within Virginia's five-year statute of limitations for claims arising under written contracts. Va. Code Ann. § 8.01-246(2). The parties agree that, assuming the claims are valid, Defendant's monetary counterclaims were brought within Virginia's five-year statute of limitations. Plaintiff only argues that Defendant insufficiently alleges that any monetary cause of action accrued before the Agreement terminated.

Plaintiff asserts that the Agreement terminated on May 16, 2019. Therefore, according to Plaintiff, monetary claims must have accrued by May 16, 2019, and could be brought as late as May 16, 2024. All other claims arising under the Agreement would be time-barred as of May 16, 2020, at the latest. Thus, according to Plaintiff, all four of Defendant's counterclaims are time-barred because Defendant filed its Answer and Counterclaims on June 10, 2020.

This Court, sitting in diversity, must apply Virginia law governing statutes of limitation. The Court is bound to apply not only Virginia statutes of limitation, but also Virginia rules and laws that are "an integral part of the state statute of limitations." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 746 (1980) (holding that a state summons rule was an integral part of the state statute of limitations). Under Virginia law, claims arising out of a contract accrue at the time the contract is breached. Va. Code Ann.

11

§ 8.01-230. No breach of contract could occur, and therefore, no cause of action could accrue, after a contract is terminated. If the date a contract terminated is at issue, the complainant need not resolve this contested fact in its complaint. *See Republican Party of N.C.*, 980 F.2d at 952. The essential elements of a breach of contract claim in Virginia are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *See, e.g., Caudill v. Wise Rambler, Inc.*, 168 S.E.2d 257, 259 (Va. 1969).

### i. Counterclaim Count I

Plaintiff contends that Count I, a monetary claim, should be dismissed because Defendant has not pled with sufficient specificity that Plaintiff's alleged failure to pay for certain goods occurred before May 16, 2019. According to Defendant, Plaintiff owes $782,285.00 in principal and $157,478.00 in interest and costs for incomplete and delinquent payments made between 2018 and May 31, 2020.

Defendant has laid out facts which, taken as true, plausibly state that Plaintiff breached the Agreement. The Agreement constitutes a legally enforceable obligation. Defendant clearly alleges that Plaintiff violated the Agreement by "failing to make full and complete payments owed to [Defendant] under the Agreement" in amounts totaling $939,763.00. (Answer & Countercls. 9, ECF No. 13.) Although Defendant does not allege a specific termination date, it clearly states that its damages accrued "under the Agreement" on or before March 26, 2020. (*Id.*) Finally, as a result of Plaintiff's failure to pay, Defendant purportedly suffered monetary damages totaling $939,763.00. For

these reasons, this Court finds that Defendant sufficiently pled facts that, taken as true, plausibly state a claim for breach of contract. Plaintiff's Motion to Dismiss as to Count I will be denied.

### ii. Counterclaim Count II

Defendant claims in Count II that Plaintiff, unilaterally and without authority, deducted $200,000.00 from an outstanding invoice payment on April 1, 2019. Plaintiff does not make any substantive argument regarding Count II; rather, it only argues that Count II and Defendant's other counterclaims are mutually exclusive. Plaintiff contends that Count II sets the Agreement termination date at May 16, 2019, but Count IV sets the termination date as late as March 13, 2020. Accordingly, Plaintiff contends, Defendant cannot argue different termination dates under the doctrine of approbate and reprobate.

Approbate and reprobate is a distinct legal concept precluding litigants from taking inconsistent positions to the degree that the litigant invites error and takes advantage of the inconsistency. *See Matthews v. Matthews*, 675 S.E.2d 157, 160 (Va. 2009). This Court has likened approbate and reprobate to "the doctrine of judicial estoppel or the invited error doctrine in appellate procedure." *Peraton, Inc. v. Raytheon, Co.*, No. 1:17-cv-979, 2018 WL 10436093, at *2 (E.D. Va. Jan. 24, 2018). By contrast, litigants are free to plead alternative theories of recovery under both Virginia law and the Federal Rules of Civil Procedure. Under Virginia law, a party is free to "plead alternative facts and theories of recovery." VA. SUP. CT. R. 1:4(k). Further, a party "may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." *Id.* Similarly, under the Federal Rules of

13

Civil Procedure, a pleading stating a claim for relief "may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3).

Considering that the termination date is a factual issue in this litigation, Defendant necessarily presents alternative dates for when each alleged breach occurred. Defendant has neither benefitted from taking separate, incongruous positions in this litigation nor has it invited error. Therefore, the doctrine of approbate and reprobate is inapplicable here and this Court will deny Plaintiff's Motion to Dismiss as to Count II.

### iii. Counterclaim Count III

Defendant asserts in Count III that it suffered damages in canceled orders, lost sales, and other costs related to product shortages stemming from Plaintiff's deficient performance under the Agreement. Plaintiff argues that, inasmuch as Count III claims monetary damages, it insufficiently describes Plaintiff's pre-termination conduct constituting a breach. Assuming Count III includes a claim for non-monetary damages, Plaintiff asserts that Count III is time-barred because Defendant filed its counterclaims after May 16, 2020.

To the extent that Count III is a monetary claim, Plaintiff's Motion to Dismiss will be denied. Defendant alleges that it suffered certain damages as a result of Plaintiff's breach of the Agreement when Plaintiff failed to make necessary capital investments, delayed order fulfillment, and maintained insufficient inventory. Accepting Defendant's allegations as true, Defendant plausibly states a claim for breach of contract under Count III. Monetary relief sought under this claim is timely pled under the applicable five-year statute of limitations. As far as Count III relates to non-monetary damages and is thus

covered by the parties' contracted one-year limitations period, these claims survive for reasons discussed below.

### iv. Counterclaim Count IV

Defendant in Count IV seeks a declaratory judgment that the Agreement is terminated. Plaintiff argues that Count IV is time-barred because it is a non-monetary claim brought after May 16, 2020. In response, Defendant argues that its non-monetary claims were timely filed because the one-year contractual limitations period was tolled by a series of emergency orders issued by the Supreme Court of Virginia relating to the COVID-19 pandemic.

On March 16, 2020, Chief Justice Lemons, of the Supreme Court of Virginia, issued an order declaring a judicial emergency in response to COVID-19. *In re:* Order Declaring a Judicial Emergency in Response to COVID-19 Emergency, Mar. 16, 2020, http://www.courts.state.va.us/news/items/covid/2020_0317_supreme_-court_of_virginia.pdf. Although this Court is not generally bound by emergency orders issued by the Supreme Court of Virginia, Justice Lemons's orders tolling all deadlines in response to COVID-19 would be integral to any Virginia court's analysis of a statute of limitations issue. Therefore, the orders must also inform this Court's analysis. *See Walker*, 446 U.S. at 746. Justice Lemons declared that "all deadlines [were] hereby tolled and extended, pursuant to Va. Code § 17.1-330(D), for a period of twenty-one (21) days." *Id.* Following the March 16, 2020 order declaring a judicial emergency, Justice Lemons extended the tolling of all deadlines through July 20, 2020 in six subsequent orders. *In re:* Seventh Order Extending Declaration of Judicial Emergency in Response

15

to COVID-19 Emergency, July 8, 2020, http://www.vacourts.gov/news-/items/covid/2020_0708_scv_seventh_order.pdf.

Plaintiff asserts that, based on the Agreement's termination date of May 16, 2019, any non-monetary claim was time-barred after May 16, 2020. Defendant filed its counterclaims on June 10, 2020. Justice Lemons tolled *all deadlines* in response to COVID-19 from March 16, 2020, through July 20, 2020, a period of just over four months. *See id.* Defendant's counterclaims were filed just under a month later than May 16, 2020, and within the COVID-19 tolling period. Therefore, the counterclaims were timely filed under the orders of the Supreme Court of Virginia.

Plaintiff relies on *Massie v. Blue Cross and Blue Shield*, 500 S.E.2d 509 (Va. 1998) to argue that tolling provisions under Virginia law do not apply to a statute of limitation that has been contractually shortened by the parties. However, the Supreme Court of Virginia's holding in *Massie* is narrow. There, the court assessed whether a statute tolling the statute of limitations following nonsuit of a claim (Virginia's analogue to voluntary dismissal) applied to a limitation period contractually agreed to by the parties. 500 S.E.2d at 511. The court held that the specific statute at issue in that case did not apply to contractual limitations periods because "the operative language, '*the statute of limitations* . . . shall be tolled . . .'" was limited to statutes, and excluded other forms of limitation periods. *Id.* (quoting Va. Code Ann. § 8.01-299(E)(3)). The court declined to assess whether the holding would be the same if applied to a more general tolling provision. *Id.* at 512 n.3. By contrast, Justice Lemons's judicial emergency orders toll "all applicable deadlines, time schedules and filing requirements, *including*

any applicable statute of limitations." *In re:* Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency, Mar. 27, 2020 (emphasis added), http://www.vacourts.gov/news/items/2020_0327_scv_order_extending_declaration_of_-judicial_emergency.-pdf. Virginia's judicial emergency orders clearly apply to all applicable deadlines and time schedules in civil cases, which includes the parties' contractually created limitations period. Accordingly, this Court finds that Defendant's non-monetary claims in Count III and Count IV were timely filed, and Plaintiff's Motion to Dismiss will be denied.[2]

### C. Defendant's Motion to Strike Exhibit 2

Defendant seeks to strike Exhibit 2 from the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). Exhibit 2 is a copy of an email chain and its attachments containing a discussion between Plaintiff and Defendant's employees. Defendant argues that Exhibit 2 should be struck because it is not a "written instrument" such that may be appended to a complaint under Rule 10(c) and, in the alternative, that it is redundant, immaterial, and impertinent.

Courts may, sua sponte or on motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The United States Court of Appeals for the Fourth Circuit generally disfavors Rule 12(f) motions to strike and views these motions as "drastic"

---

[2] Finding that Defendant's counterclaims were all timely filed, this Court need not address Defendant's argument that its non-monetary claims were timely filed because the Agreement is indivisible and executory.

17

remedies. *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, 647 (2d ed. 1990)).

Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Fourth Circuit has not specifically stated whether an e-mail is a "written instrument" under Rule 10(c). Defendant fails to cite any authority to support its contention that an e-mail is not a written instrument. At least one circuit, the Second Circuit, has held that e-mails are written instruments under Rule 10(c), and this Court has previously presumed that e-mails may be attached pursuant to Rule 10(c). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (finding that e-mails attached to complaint were written instruments integral to the plaintiff's complaint and therefore were properly considered by the district court in ruling on the defendant's Rule 12(c) motion); *Bailey v. Virginia Dep't of Alcoholic Beverage Control*, No. 2:18-cv-392, 2019 WL 123903, at *3 n.3 (E.D. Va. Jan. 7, 2019) (citing Rule 10(c) in discussing e-mails attached to the defendant's brief but finding that the e-mail documents were not integral to the complaint); *Shuler v. Partner JD*, No. 3:15-cv-70, 2015 WL 5020898, at *3 n.5 (E.D. Va. Aug. 20, 2015) (citing Rule 10(c) in explaining why the Court could consider an e-mail). Accordingly, this Court finds that the written communications sent electronically and attached to the Amended Complaint as Exhibit 2 constitute written instruments under Rule 10(c).

Exhibit 2 is not redundant, immaterial, or impertinent. Plaintiff cites Exhibit 2 in its Amended Complaint as support for the allegation that Plaintiff had exclusive rights to

18

service Home Depot Canada. A written instrument attached to a complaint is immaterial "if it has 'no essential or important relationship to the claim for relief or the defenses being pleaded'" and is impertinent if "it does 'not pertain, and [is] not necessary, to the issues in question.'" *Meth v. Natus Med., Inc.*, No. 3:14-cv-173, 2014 WL 3544989, at *3 (E.D. Va. June 17, 2014) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 2004)) (holding that notices attached to a complaint should be struck because the notices became a legal nullity after they were separately struck by a different court in a different lawsuit). Exhibit 2 is not redundant because Plaintiff does not otherwise address the substance of the communications contained in the exhibit. Exhibit 2 provides a factual basis to support Plaintiff's allegation, making the exhibit pertinent and material to the issues in question. Accordingly, this Court will deny Defendant's Motion to Strike Exhibit 2 to Plaintiff's Amended Complaint.

### D. Defendant's Motion to Strike Plaintiff's jury demand

Finally, Defendant also asks this Court to strike Plaintiff's demand for a jury trial pursuant to the parties' jury waiver in the Agreement. (Compl. Ex. 1 § 17, ECF No. 6.) Plaintiff expressly admits that the jury trial waiver in the Agreement is enforceable and only argues that the waiver does not apply to Plaintiff's tort claims enumerated in Count III of the Amended Complaint.[3] Concurrent with this Court's ruling granting

---

[3] Plaintiff, in its response to Defendant's Motion to Strike, provides additional substantive argument and attaches e-mail exhibits in support of its tortious interference claim. (ECF No. 44, Ex.1.) This Court will not consider these arguments or attachments as they are irrelevant to the jury waiver issue. Furthermore, this Court cannot retroactively apply Plaintiff's arguments here

Defendant's Motion to Dismiss Count III of the Amended Complaint, Plaintiff's admission renders this issue moot. Accordingly, Defendant's Motion to Strike the jury demand will be granted.

### III. CONCLUSION

In conclusion, finding that Plaintiff fails to state a claim for tortious interference and that Plaintiff's punitive and extra-contractual damages claims are precluded by the unambiguous terms of the Agreement, the Court will grant Defendant's Partial Motion to Dismiss. The Court will therefore dismiss Count III of the Amended Complaint and Plaintiff's punitive and extra-contractual damages claims without prejudice. Finding that Defendant timely filed and adequately pled its monetary and non-monetary counterclaims, Plaintiff's Motion to Dismiss will be denied. Finally, Defendant's Motion to Strike Exhibit 2 to the Amended Complaint will be denied and Motion to Strike the jury demand will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 3, 2020
Richmond, Virginia

---

to its analysis of Defendant's Partial Motion to Dismiss Plaintiff's tort claim. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (finding that courts do not generally consider extrinsic materials when evaluating a complaint under Rule 12(b)(6) unless the extrinsic materials are incorporated into the complaint by reference or attached to the motion to dismiss and integral to the allegations in the complaint).